458 So.2d 612 (1984)
Stanley E. O'QUINN, et ux., Plaintiffs-Appellees,
v.
HAAS INVESTMENT COMPANY, INC., Defendant-Appellant.
No. 83-960.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1984.
*613 Laborde & Lafargue, David Lafargue, Marksville, for defendant-appellant.
William J. Bennett, Marksville, for plaintiff-appellee.
Before GUIDRY, STOKER and YELVERTON, JJ.
YELVERTON, Judge.
Haas Investment Company, Inc., the loser in consolidated possessory and damages actions, appeals the judgment arguing that the evidence was insufficient to prove the elements of a possessory action, and further urging that damage awards for mental anguish are not allowable in a case of disturbance of possession of an immovable. Appellant also complains of the amounts of the awards, and the plaintiffs-appellees, two brothers O'Quinn and their wives, answering the appeal, seek an increase in the awards. We find no merit to any assignment of error raised by any party, and we affirm.
Stanley and Grace O'Quinn, husband and wife, brought a possessory action against this defendant, and later filed a separate action for damages arising out of the same disturbance of possession. David and Opal O'Quinn filed a third suit, combining a possessory action and damage claims. These three cases were consolidated for trial. All cases are appealed. We have chosen the captioned case as the vehicle for our opinion, but separate judgments are being handed down this date in the other two cases: O'Quinn v. Haas Investment Company, Inc., 458 So.2d 617 (La.App. 3rd Cir.1984); and O'Quinn, Jr. v. Haas Investment Company, Inc., 458 So.2d 617 (La.App. 3rd Cir.1984).
The issues are three: (1) whether plaintiffs proved the elements required for a possessory action, (2) if so, whether they are entitled to damages for mental anguish, and (3) if so, whether the amount awarded is either too high or too low. We will discuss these issues after first giving the reader a brief explanation of the basic facts.
FACTS
The immovable property in this dispute is located in the northeast part of Evangeline Parish near its boundary with Avoyelles. The disturbance was the construction of a north-south fence between the property of the Haas family on the east and the O'Quinn homes on the west. The fence, erected by the appellant, Haas Investment Company, Inc., lessee of the Haas family property, was put on a line some 48 feet west of the eastern limits of the property of which the O'Quinns claimed possession. The fence went across David's yard beside his house, and south from there it went onto brother Stanley's land which was under cultivation. The building of the fence began on June 18, 1981, and was halted the next day when plaintiffs complained. The possessory actions were filed in December of that year.
THE POSSESSORY ACTIONS
Under La.C.C.P. art. 3658, to maintain the possessory action the possessor must allege and prove that:
"(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
"(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
"(3) The disturbance was one in fact or in law, as defined in Article 3659; and
"(4) The possessory action was instituted within a year of disturbance."
*614 The trial court found that all elements of Article 3658 had been proved.
We agree with these factual findings. Plaintiffs testified that, at the time of the disturbance, they were in possession of property to the east up to an old fence line. The wire fence itself was gone, but mature trees that had grown up along the fence, while it was there, made an unmistakably clear line of demarcation north and south, a line described by plaintiffs in their testimony, clearly visible in photographs in evidence, and shown on the various surveys introduced at trial. The photographs, taken immediately after the disturbance, showed a newly constructed fence very close to the east side of David's house, and a well-manicured yard from the edge of the house on beyond the new fence to the old tree line. On the other side of the tree line was a cultivated field. Down south by Stanley's property, the pictures showed, just as the witnesses testified, that the new fence was being constructed in the rows of a field under cultivation with what appeared to be soybeans, and that an old tree line stood along the eastern edge of that field. Thus it is that the evidence supports a finding of corporeal possession, one of the ways that the possession requirements are satisfied (La.C.C.P. 3660), at the time of the disturbance.
The plaintiffs established not only their possession of the disputed strip at the time of the disturbance, but also the additional element that they had been in possession for more than a year immediately prior to the disturbance. As the Supreme Court said on rehearing in City of New Orleans v. New Orleans Canal, Inc., 412 So.2d 975 (La.1981):
What constitutes possession depends largely on the nature of the property. As noted by this Court in Liner v. Louisiana Land and Exploration Co., 319 So.2d 766 (La.1975):
"The concept of possession is neither simple nor precise. (See Riseman, Elementary Considerations in the Commencement of Prescription on Immovable Property, 12 Tul.L.Rev. 608 (1938). The quality of possession required in a particular case depends not only on its classifications as good faith or bad faith possession, but also on the type of land in dispute."
Further, where an individual claims by corporeal detention alone and without title, he must show an adverse possession within enclosures. Norton v. Addie, 337 So.2d 432 (La.1976). See also 2 Civil Law Treatise (2 Ed.Sec. 212). "Enclosed" does not necessarily mean "fenced in", but does require "that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, where by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof." Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952).
The corporeal possession required to institute a possessory action corresponds with the possession necessary for acquisitive prescription of thirty years. Norton v. Addie, supra; Liner v. Louisiana Land & Exploration Co., supra. Consequently, the possession must be open, continuous, public, unequivocal and uninterrupted with the intent to possess as owner. Succession of Kemp v. Robertson, 316 So.2d 919 (La.App., 1975), writ den. 320 So.2d 906. The intent to possess as owner cannot be inferred when the circumstances are insufficient to give reasonable notice to the public and the owner of the property that the possessor is unequivocally possessing as owner. Woodell v. Roberts, 329 So.2d 858 (La.App.1976), writ ref. 333 So.2d 248 [(La.1976)].
The trial judge was satisfied, based on the undisputed testimony of the plaintiffs, that they and their ancestors in title possessed to the tree line for more than the requisite one year before the disturbance. There was no error in this finding of fact.
*615 The construction of the fence was clearly a disturbance in fact of plaintiff's possession as that, the third requisite of the possessory action, is defined in C.C.P. 3659.
Finally, the suits were brought in December of the same year the disturbance occurred in June, thus satisfying the fourth requirement of the article.
Defendants argue that plaintiffs did not prove the required possession because they did not prove the extent of their possession. This argument is based on the disparity between two surveys stipulated into evidence. One survey puts the old fence line (the tree line) to the west of the surveyed boundary while the other puts it to the east. Arguing that its survey is superior to the other, defendant claims that, even if plaintiffs possessed to the old fence line, this was short of the true boundary, where the new fence was constructed.
We reject this argument. Which of the two surveys is correct cannot be determined from the record, but this determination is unnecessary. Each was introduced by stipulation without the accompanying testimony of the surveyors, and it would be arbitrary for this court to pick one over the other for accuracy. All that they reflect is that a survey difference of opinion exists. What is important to our case is whether the plaintiffs proved their corporeal possession, and fixed with certainty the limits of that possession. The trial judge determined that the tree line clearly established the limits of their possession, and our study of the testimony and photographs supports this conclusion. We find no error in the trial court's determination that plaintiffs proved the elements of a possessory action.
DAMAGES
The trial court awarded damages for mental anguish totaling $5,000, apportioned: $2,000 for David and $1,000 for Opal O'Quinn, and $1,000 each for Stanley and Grace O'Quinn.
The defendant contends that the trial court erred in including mental anguish, humiliation, and embarrassment as elements in its award of damages for disturbance of possession of an immovable.
Under LSA-C.C.P. art. 3662(3) the court in a possessory action is authorized to award damages to which a party is entitled and which he prayed for. In a case where the evidence shows that the disturbance of possession amounted to a trespass, damages are to be measured in accordance with the law of trespass. Garrett v. Martin Timber Company, Inc., 391 So.2d 928 (La.App. 2nd Cir.1980), writ denied 397 So.2d 804 (La.1981).
In a case of wanton and willful trespass, committed without a vestige of legal right or good faith, an award for mental anguish, humiliation and embarrassment is appropriate. Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir.1959); Thibodeaux v. Western World Ins. Company, 391 So.2d 24 (La.App. 3rd Cir.1980).
The defendant contends that it was in good faith since it relied on a survey to determine where the boundary was. We disagree.
We fail to see how defendant can rely on the survey as its defense to bad faith, considering its standing in this case. Defendant was merely a lessee. It had no semblance of a claim as owner. Significantly, it did not have the authority or permission of the owners, its lessors, and was not acting in their behalf, when it unilaterally went on the land in plaintiffs' possession and built the fence. After the present possessory actions were filed against defendant, the plaintiffs joined as additional defendants the individual owners of the property under lease to Haas Investment. The trial court dismissed the suit against the owners-lessors when it became evident that they had neither authorized nor permitted the construction of the fence by their lessee. On this appeal no one disputes the propriety of that dismissal.
It could hardly be said that defendant was protecting its possession under its lease when it built the fence, because the evidence is quite clear that from the time it went into possession of its leased property *616 until the time it built the new fence, it was not in possession of the disputed strip. On June 18, 1981, defendant put a fence 15 feet from David's house cutting off 48 feet of his yard, and extended the fence south right down the middle of a row of Stanley's growing soybean field. The boundary between the properties and the fact that the O'Quinns were possessing the property is clearly apparent in the photographs in evidence. The farm superintendent of the defendant who supervised the construction of the fence testified that the old fence tree line was clearly visible. There is no question that the O'Quinns had possessed this property for many years. That someone was in possession of this property other than itself could hardly have been more obvious to defendant.
To escape a finding of bad faith, defendant would have to show something more than that there existed a 1980 disputed survey showing where their lessors' property line should be. That survey had been obtained by its lessors, not by defendant. Without the authority of its lessors, defendant had no right, under the pretext of relying on that survey, to expand its lease by forcibly taking possession of land obviously in the possession of another.
In Garrett v. Martin Timber Company, Inc., supra, the trespasser was found to be in good faith where he relied on a survey of the property to cut timber and crossed onto plaintiff's property even though there were remnants of an old fence. The court found that it was not unreasonable for the loggers to believe the old fence had been abandoned.
In the present case the defendant actually had to remove some other fences on David O'Quinn's land in order to get on the property and construct its fence. The fence was constructed through the backyard of David O'Quinn's property within 15 feet of his house and through a cultivated field of Stanley O'Quinn. The defendant's actions were unreasonable in light of the nature of the O'Quinns' possession.
For these reasons we find the defendant's actions constituted deliberate and forcible trespass to the plaintiffs' property rights, and the trial court was justified in making the damage award.
The defendant also contends that the award was excessive; the plaintiffs answered the appeal contending the award was inadequate.
As this court stated in Lloyd v. Hunt Exploration, Inc., 430 So.2d 298 (La.App. 3rd Cir.1983):
In determining whether or not a trial court award may be questioned as inadequate or excessive, a reviewing Court must first look to the individual circumstances of the case at hand. Only in those circumstances where an articulated analysis of the facts discloses an abuse of discretion may an award on appellate review be considered inadequate or excessive. Reck v. Stevens, 373 So.2d 498 (La.1979).
When it is clear that the plaintiff has sustained some damage through the fault of the defendant, his demands will not be rejected simply because he cannot establish with accuracy the pecuniary amounts that he has suffered. Roshong v. Travelers Insurance Company, 281 So.2d 785 (La.App. 3rd Cir. 1973). However, damages for mental anguish and distress must be shown by competent evidence in order to sustain an award for such. McKowen v. McCraine, 244 So.2d 45 (La.App. 1st Cir.1971). Lambert v. Donald G. Lambert Construction Company, 371 So.2d 1167 (La. App. 4th Cir.1978); Rhodes v. Collier, 215 La. 754, 41 So.2d 669 (La.1949); Loeblich v. Garnier, 113 So.2d 95 (La. App. 1st Cir.1959).
In the present case each plaintiff testified that the defendant's actions caused them worry and anguish. Each plaintiff was clearly upset by the defendant's actions. David O'Quinn submitted medical evidence that he has heart disease, that he was examined shortly after the defendant's actions, and that the doctor noted him to be anxious and depressed and under considerable stress. Under these facts we cannot say that the trial court *617 abused its discretion. The award was neither excessive nor inadequate.
The judgment of the trial court is affirmed. Appellant will pay the cost of appeal.
AFFIRMED.